Case 4:23-cv-03383   Document 22   Filed on 03/17/25 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
March 17, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONOCOPHILLIPS COMPANY, | § | |
| *Plaintiff*, | § § § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-3383 |
| TOTEM WELL SERVICE, LLC, | § § § | |
| *Defendant.* | § § | |

### ORDER

Pending before this Court is Plaintiff ConocoPhillips Company's ("Plaintiff" or "Conoco") Motion for Summary Judgment. (Doc. No. 16). Defendant Totem Well Service, LLC ("Defendant" or "Totem") filed a response (Doc. No. 19), and Plaintiff replied. (Doc. No. 20). Plaintiff initially filed a Partial Motion for Summary Judgment. (Doc. No. 8), to which Defendant responded (Doc. No. 11) and Plaintiff replied. (Doc. No. 12). Plaintiff's partial motion, however, is incorporated by Plaintiff into the Motion at issue. Therefore, the Court DENIES Plaintiff's partial motion as being moot and addresses Plaintiff's full Motion. (Doc. No. 8). Having considered the full Motion for Summary Judgment, response, reply, and the evidence, Plaintiff's Motion for Summary Judgment is DENIED without prejudice. (Doc. No. 16).

### I.   Background

This is a contract interpretation dispute. Conoco, a Texas company, and Totem, a New Mexico company, entered into a Master Service Agreement on October 26, 2021 (the "MSA"). *See* (Doc. No. 8-1). Conoco engaged Totem to perform "well-related services" for Conoco's oil and gas wells. (*Id.* at 5). On April 18, 2023, Conoco was sued in Texas state court by a Totem employee based on personal injuries he allegedly suffered at a well site while performing his duties in Carlsbad, New Mexico pursuant to the MSA (the "Underlying Texas Suit"). (Doc. No. 8-2). The

next month, Conoco sent Totem a demand for defense and indemnity in connection with the Underlying Texas Suit. (Doc. No. 8-5). Subsequently, Conoco brought suit based upon the MSA against Totem in this Court after Totem refused to defend and indemnify Conoco in the Underlying Texas Suit.[1] Conoco now seeks the same relief with respect to the Underlying New Mexico Suit.

The first step in resolving this dispute is to determine which state's law applies. Conoco asks the Court to find that Texas law, rather than New Mexico law, controls the interpretation of the MSA. (Doc. No. 8). Then, if Texas law does apply to the indemnity provision of the MSA, Conoco asks the Court to declare that Totem has a duty to defend and indemnify Conoco, "as well as Conoco's contractors and subcontractors, from and against all claims relating to the [Underlying Texas Suit] and the [Underlying New Mexico Suit]." (Doc. No. 13 at 4). Totem contends that it has no duty to defend or indemnify Conoco because New Mexico law controls this issue, and the indemnity provision in the MSA is void as violative of the public policy of New Mexico. Thus, the initial issue the Court must decide whether Texas or New Mexico law applies.

Conoco, as "Company," and Totem, as "Contractor," agreed to the following indemnity provision in the MSA:

> CONTRACTOR SHALL INDEMNIFY EACH OF THE MEMBERS OF COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATED IN ANY WAY TO PERSONAL INJURY OF OFFICERS, DIRECTORS, PERSONNEL, OR INVITEES OF ANY OF THE MEMBERS OF CONTRACTOR GROUP OCCURRING IN CONNECTION WITH THIS AGREEMENT, ANY CALLOFF ORDER, OR PERFORMANCE OF THE WORK UNDER ANY CALL-OFF ORDER, REGARDLESS OF THE TIMING OR NATURE OR STYLE OF SUCH CLAIMS AND REGARDLESS OF THE IDENTITY OF THE CLAIMANT, INCLUDING SUCH OFFICERS, DIRECTORS, PERSONNEL, OR INVITEES THEMSELVES AND THEIR RESPECTIVE REPRESENTATIVES, AGENTS, HEIRS, BENEFICIARIES, ASSIGNS, AND FAMILY MEMBERS.

---

[1] The plaintiff in the Underlying Texas Suit later nonsuited the case and re-filed his suit against Conoco in New Mexico state court (the "Underlying New Mexico Suit"). Conoco seeks defense and indemnity for the Underlying New Mexico Suit and presumably for the expenses incurred defending the now-dismissed Underlying Texas Suit.

2

(Doc. No. 8-1 at 40).[2] [3]

The MSA also contains three choice of law provisions:

21.1 The interpretation and performance of this Agreement and any Call-Off Order in relation thereto, and any dispute or Claim in connection with (i) this Agreement or any Call-Off Order in relation thereto or (ii) their subject matter or formation (including non-contractual disputes or Claims), are governed by and to be construed in accordance with the laws of the State of Texas, except for any rule or law of the State of Texas that would make the law of any other jurisdiction applicable. For Work performed offshore, the interpretation and performance of this Agreement and each Call-Off Order are governed by and to be construed in accordance with the general maritime law of the United States or, if impermissible, with the laws of the State of Texas.

21.2 Specifically, if any provision of this Agreement or a Call-Off Order is determined to be unenforceable or in contravention of any Applicable Laws, such provision is to be deemed modified to the minimum extent required to bring such provision into compliance with Applicable Laws. NOTHING CONTAINED HEREIN IS TO BE CONSTRUED AS CONTRAVENING THE EXPRESS INTENTION OF THE PARTIES THAT THE LAWS OF THE STATE OF TEXAS ARE TO APPLY IN ALL RESPECTS.

21.3 For the avoidance of doubt, the Texas Oilfield Anti-Indemnity Statute, V.T.C.A., Civil Practice & Remedies Code 127.000 et seq. and its amendments do not apply to Work performed outside the State of Texas.

(*Id.* at 52). Section 21.1, as one can readily see, provides that Texas law governs the MSA, with two exceptions: 1) "any rule or law of the State of Texas that would make the law of any other jurisdiction applicable;" and 2) Texas law applies to work performed offshore under the MSA only if application of general maritime law is impermissible. Section 21.2 provides for the modification of any provision that is unenforceable or in contravention of any Applicable Laws. "Applicable

---

[2] The MSA defines Company Group as "any or all of: (i) Company and its Affiliates; (ii) Coventurers in relation to the Work and their Affiliates; (iii) Company's other contractors (other than members of Contractor Group) and their subcontractors of any tier who are engaged directly or indirectly by Company to perform work or services for the project to which the Work relates or are otherwise present during Contractor's performance of the Work, and their Affiliates; and (iv) the respective agents of any of the entities addressed in (i) through (iii) above; all the foregoing being 'members of Company Group'."

[3] The MSA defines Contractor Group as "any or all of: (i) Contractor and its Affiliates; (ii) Subcontractors and their Affiliates; and (iii) the respective agents of any of the entities addressed in (i) and (ii) above; all the foregoing being 'members of Contractor Group'."

3

Laws" under the MSA means "all national, federal, state, provincial, and local laws (including statutes, decrees, edicts, codes, orders, judgments, judicial decisions, rules, ordinances, proclamations, bylaws, regulations, and executive orders of, and the terms of any licenses, leases, rights of way, permits, or authorizations issued by, any local, municipal, national, or other duly constituted Governmental Authority) that are applicable to the Work, Sites, and the persons in relation to whom the term is used." Nevertheless, § 21.2, as quoted above, also explicitly states that "[n]othing contained herein is to be construed as contravening the express intention of the parties that the laws of the state of Texas are to apply in all respects."

Conoco contends that § 21.1 "require[es] that the MSA be governed by and construed in accordance with Texas law." (Doc. No. 8 at 4). If the parties had intended for New Mexico law to apply to work performed in New Mexico, Conoco asserts that the parties would have included an exception like the one found in § 21.1 for offshore work. (*Id.* at 12). Moreover, Conoco argues that § 21.2 is a "gap filler" provision that necessitates the application of Texas law to all disputes. (Doc. No. 12 at 2). For its part, "Totem concedes MSA includes choice-of-law provisions that, in certain circumstances, dictate Texas law should apply to some claims and disputes. . . ." (Doc. No. 11 at 6). Though Totem agrees that Texas law generally governs the MSA, it contends that § 21.1 provides an exception and this dispute requires application of that exception. (Doc. No. 11 at 7). As such, Totem maintains that New Mexico law governs the indemnity obligation. Further, the parties hotly contest the proper interpretation of § 21.3 and its application to the current dispute.

## II.    Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes

4

demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III.     Analysis

As noted above, Conoco seeks a declaration from this Court that Totem is required to defend and indemnify Conoco for both the now-dismissed Underlying Texas Suit and the Underlying New Mexico Suit. To resolve this issue, the Court must ultimately answer three questions: 1) whether § 21.3 is a valid disclaimer of the Texas Oilfield Anti-Indemnity Statute ("TOAIA"), and, if so, what is the result of its application to this dispute; 2) which state's law did the parties agree would govern the scope of the indemnity obligation; and 3) whether the parties' choice of law is enforceable for this indemnity dispute. The Court will not address issue one in this Order, but issues two and three are discussed below.

### A. Which state's law did the parties agree would govern the indemnity provision

Conoco argues that, regardless of how the Court deals with § 21.3, sections 21.1 and 21.2 still provide that only Texas law governs the indemnity dispute. On the other hand, Totem argues that the only Texas law that could potentially apply in this situation is TOAIA; and, since the parties disclaimed the application of TOAIA to work performed out of state in § 21.3, there is a "hole" in the MSA regarding choice-of-law when an oilfield accident occurs outside the State of Texas.

The primary objective of this Court in reviewing a contract is to ascertain the intentions of the parties as expressed in the contract. *Lopez v. Munos, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 861 (Tex. 2000) (citation omitted). To achieve this objective, the Court must examine the entire contract in order to "harmonize and give effect to all of its provisions so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). (citation omitted). A contract is unambiguous if it can be given a definite or certain legal meaning. *Id.* (citation omitted). Ambiguity does not arise because of a "simple lack of clarity," or because the parties proffer different interpretations of the contract. *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999) (citations omitted). Rather, a contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent canons of construction. *Webster*, 128 S.W.3d at 229 (citation omitted).

Totem suggests that language of § 21.1 proves that the parties "expressly contemplate[d] the laws of a state other than Texas may apply to claims arising under the MSA." (Doc. No. 11 at 7). It emphasizes § 21.1, which, in relevant part, provides:

> The interpretation and performance of this Agreement and any Call-Off Order in relation thereto, and any dispute or Claim in connection with (i) this Agreement or any Call-Off Order in relation thereto or (ii) their subject matter or formation (including non-contractual disputes or Claims), are governed by and to be construed

6

>in accordance with the laws of the State of Texas, *except for any rule or law of the State of Texas that would make the law of any other jurisdiction applicable.*

(Doc. No. 8-1 at 52) (emphasis added).

Conoco requests that the Court interpret the exception to say that "neither party may rely on Texas law or rules for purposes of arguing that a different jurisdiction's law may apply." (Doc. No. 8 at 8). Conoco insists that, "the parties do not dispute that the MSA precludes reliance on Texas choice-of-law principles to support application of another jurisdiction's law." (Doc. No. 12 at 4). Yet, Totem certainly disputes that the MSA precludes reliance of Texas's choice-of-law principles. Specifically, Totem points to Texas's choice-of-law rules as a "rule or law of the State of Texas that would make the law of any other jurisdiction applicable."

The Court finds that the plain language of the clause "except for any rule or law of the State of Texas that would make the law of any other jurisdiction applicable" clearly anticipates a situation where the law of a jurisdiction other than Texas may govern a dispute arising under the MSA. The Court agrees with Totem that this is the only reasonable interpretation of § 21.1. It clearly requires that Texas law generally governs the MSA. Nevertheless, the same clause provides an exception that unambiguously allows another jurisdiction's law to apply where a rule or law of the State of Texas would require the application of some other jurisdiction's law, *i.e.* Texas's choice-of-law rules. Conoco's proposed interpretation would require the Court to find the exact opposite—that Texas law generally governs the MSA *and* no other jurisdiction's law applies *even if* the rules and laws of the State of Texas so require. This is an unreasonable interpretation of the provision. Therefore, § 21.1 requires that where Texas's choice-of-law principles necessitate another jurisdiction's law to apply, the law of the resulting jurisdiction does govern that dispute.

7

Totem does not address the language of § 21.2. Section 21.2 starts by addressing the parties' intention should a provision of the MSA be determined to be unenforceable or in contravention of any Applicable Laws. Section 21.2 states:

> if any provision of this Agreement . . . is determined to be unenforceable or in contravention of any Applicable Laws, such provision is to be deemed modified to the minimum extent required to bring such provision into compliance with Applicable Laws. NOTHING CONTAINED HEREIN IS TO BE CONSTRUED AS CONTRAVENING THE EXPRESS INTENTION OF THE PARTIES THAT THE LAWS OF THE STATE OF TEXAS ARE TO APPLY IN ALL RESPECTS.

(Doc. No. 8-1 at 52). Conoco argues that the last sentence is a "gap-filler" that removes "all doubt" that Texas law applies. (Doc. No. 12 at 2). While Conoco's description may be accurate, the Court does not agree with Conoco that this language requires the application of Texas law to the indemnity dispute.

The Court is required to "harmonize and give effect to all of its provisions so that none will be rendered meaningless." *Webster*, 128 S.W.3d at 229. To find that this provision necessitates application of Texas law, regardless of Texas's choice of law principles, would render the exception expounded in § 21.1 meaningless. As such, the Court finds that the language of § 21.2 is simply a restatement of the parties' intent in § 21.1—that Texas law generally applies, with some exceptions, including application of Texas choice-of-law principles where required.

It is at this stage that the Fifth Circuit's decision in *Cannon Oil* becomes instructive. *See Cannon Oil & Gas Well Servs., Inc. v. KLX Energy Servs., L.L.C.*, 20 F.4th 184 (5th Cir. 2021).

**B. *Cannon Oil***

In *Cannon Oil*, the Fifth Circuit was faced with a case similar to the one at bar. *Id.* There, Cannon and KLX Energy Services entered into a "Master Equipment Rental Agreement," which governed all equipment rented as well as any services provided by KLX. *Id.* at 186. The agreement contained two relevant provisions: 1) a choice-of-law clause providing that Texas law governs the

8

agreement; and 2) an indemnity provision under which Cannon and KLX must "protect, defend, and indemnity" each other against losses involving injuries sustained by the other's employees, regardless of who is at fault. *Id.* KLX anticipated providing equipment and services only where Cannon did business. *Id.* at 187. KLX never invoiced Cannon for work in Texas. *Id.*

A Wyoming employee of KLX was subsequently injured while performing a necessary test on his employer's equipment located at Cannon's oil well in Wyoming. *Id.* The employee sued Cannon in Wyoming. *Id.* Cannon filed a federal declaratory judgment action in the Southern District of Texas seeking to enforce KLX's indemnity obligation for the Wyoming lawsuit. *Id.*

The Fifth Circuit first looked at the provisions of their agreement to determine the parties' intent, specifically as to which state's law would govern the scope of the indemnity obligation. The indemnity clause provided that indemnity "shall only be effective to the maximum extent permitted by applicable law, whether by statute or a controlling applicable judicial decision." *Id.* The "applicable law" clause was held to be a savings clause that preserved the indemnity provision to the extent allowed by "applicable law," which, per the choice-of-law provision, was Texas. *Id.* Thus, the Court held that the parties in *Cannon Oil*, like the parties here, chose Texas law to generally govern the scope of the agreement. *Id.* at 188.

The Fifth Circuit next narrowed in on the ultimate question; whether the Texas or Wyoming Anti-Indemnity Act applied to indemnity sought for a "Wyoming lawsuit filed by a Wyoming resident injured in a Wyoming oilfield operated by a Wyoming business."[4] *Id.* at 186. It reasoned

---

[4] The Court notes that when faced with the issue of whether TOAIA should apply in an out-of-state indemnity dispute, the Fifth Circuit did not find that TOAIA could not apply to work performed outside the State of Texas like Totem suggests this Court should find. Instead, the Fifth Circuit determined that it must perform a choice-of-law analysis to determine which state's law should control. Although the Fifth Circuit did not squarely address the issue of whether TOAIA could apply to work performed outside of the State of Texas, it seemingly would not have performed the conflict-of-law analysis if it could not. Thus, the panel in *Cannon Oil* does not preclude the assumption that parties could agree that TOAIA applies to out-of-state work.

that, despite the fact that the parties' agreed that Texas law would govern the indemnity obligation, it must use Texas choice-of-law principles to make that ultimate determination.

### C. Texas choice-of-law principles

That same reasoning applies to this obviously New Mexico-centered lawsuit. Federal courts apply the conflicts-of-law rules of the state in which the action was filed to determine what law governs state-law claims. *Abraham v. State Farm Mut. Auto. Ins. Co.*, 465 F.3d 609, 611 (5th Cir. 2006). As noted above, this state-law contractual claim was filed in Texas. As such, the Court must apply Texas choice-of-law principles to determine whether Texas or New Mexico law governs the indemnity obligation. *Id.*; *see also*, *Cannon Oil*, 20 F.4th at 188. Here, this general rule is buoyed by the fact that the parties contracted to use Texas's choice-of-law principles.

Texas courts look to the Restatement (Second) of Conflict of Laws to determine whether to enforce a contractual choice of law. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990). Under the Restatement, three things must be true for New Mexico law to override the parties' choice of Texas law. First, New Mexico must have a "more significant relationship" with the parties and transaction than Texas does. *DeSantis*, 793 S.W.2d at 678. Second, New Mexico must have a "materially greater interest" than Texas in applying its law to this set of facts. *Id.* Third, applying Texas law must be contrary to a fundamental policy of New Mexico. *Id.*; *see Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 325–27 (Tex. 2014) (analyzing a choice-of-law clause using these three steps). Central to these inquiries is each state's interest in the particular substantive issue to be resolved—here, indemnity. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000).

Totem argues that *Cannon Oil* controls the Court's decision and that the Court should find that New Mexico law controls. Conoco does not reply directly to Totem's argument that *Cannon*

*Oil* controls; instead it points out that Totem has not provided sufficient evidence of the choice-of-law factors. Both contentions are somewhat correct. While the Court's decision as to which state's law applies must be supported by facts and evidence, questions regarding conflicts of law are questions of law. *Abraham*, 465 F.3d at 611. Though the question of which state's law applies is ultimately a question of law, the Court must be able to support its determination with facts and evidence. *Abraham*, 465 F.3d at 611. Neither side has provided sufficient evidence to determine which state's law applies. Therefore, on the record before the Court, it cannot find that the indemnity obligation is, as a matter of law, governed by Texas or some other state's law.

To address this issue, the parties must submit additional briefings, argument, and evidence. Since choice-of-law is a question of law, the Court is of the opinion that the economy and resources of the judiciary would not be best served by proceeding to trial at this time. Instead, Conoco is hereby ORDERED to file a second motion for summary judgment addressing and providing argument and evidence concerning the application of Texas's choice-of-law analysis. In response, Totem should address and provide argument and evidence to support its argument that New Mexico law applies. Accordingly, the Court hereby sets aside the current scheduling order and enters the following Scheduling Order in its place:

1. Conoco shall file a second motion for summary judgment by no later than **May 16, 2025**.
2. Totem shall respond within twenty-one days of Conoco's filing of said motion.
3. Conoco may file a reply, if it so chooses, within seven days of Totem's filing of its response.

### IV.   Conclusion

For the foregoing reasons, Conoco's Partial Motion for Summary Judgment is **DENIED** as moot and its subsequent Motion for Summary Judgment is **DENIED** without prejudice to file

the briefing contemplated above. (Doc. Nos. 16, 8). Additionally, the recently filed Joint Motion for Continuance is **DENIED** as moot. (Doc. No. 21).

Signed at Houston, Texas, this 17th day of March, 2025.

Andrew S. Hanen
United States District Judge