Case 4:23-cv-03383   Document 28   Filed on 11/06/25 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
November 06, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONOCOPHILLIPS COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-3383 |
| | § | |
| TOTEM WELL SERVICE, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Pending before this Court is Plaintiff ConocoPhillips Company's ("Plaintiff" or "Conoco") Motion for Summary Judgment (Doc. No. 25) and Defendant Totem Well Service, LLC's ("Defendant" or "Totem") Cross Motion for Summary Judgment (Doc. No. 26). Having considered Conoco's Motion for Summary Judgment, Totem's Cross Motion for Summary Judgment, the responses, and the summary judgment evidence, Conoco's Motion for Summary Judgment (Doc. No. 25) is **DENIED**. Totem's Cross Motion for Summary Judgment (Doc. No. 26) is **GRANTED**.

### I.   FACTUAL BACKGROUND

This is a contract interpretation dispute that turns primarily over which state law controls an oilfield-related, contractual indemnification clause. Conoco, a Texas company, and Totem, a New Mexico company, entered into a Master Service Agreement on October 26, 2021 (the "MSA"). (Doc. No. 25-1). By virtue of this contract, Conoco hired Totem to perform "well-related services" for Conoco's oil and gas wells. (*Id.*). The MSA included an indemnification clause, requiring Totem to "indemnify each of the members of Company Group from and against any and all claims arising out of or related in any way to personal injury." (*Id.* at 38). Conoco, as "Company," and Totem, as "Contractor," agreed to the following:

> CONTRACTOR SHALL INDEMNIFY EACH OF THE MEMBERS OF COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATED IN ANY WAY TO PERSONAL INJURY OF OFFICERS, DIRECTORS, PERSONNEL, OR INVITEES OF ANY OF THE MEMBERS OF CONTRACTOR GROUP OCCURRING IN CONNECTION WITH THIS AGREEMENT, ANY CALLOFF ORDER, OR PERFORMANCE OF THE WORK UNDER ANY CALL-OFF ORDER, REGARDLESS OF THE TIMING OR NATURE OR STYLE OF SUCH CLAIMS AND REGARDLESS OF THE IDENTITY OF THE CLAIMANT, INCLUDING SUCH OFFICERS, DIRECTORS, PERSONNEL, OR INVITEES THEMSELVES AND THEIR RESPECTIVE REPRESENTATIVES, AGENTS, HEIRS, BENEFICIARIES, ASSIGNS, AND FAMILY MEMBERS.

(*Id.*).[1]

Two years after the execution of the MSA, a Totem employee sued Conoco in Texas state court based upon personal injuries that he allegedly suffered while performing his job in Carlsbad, New Mexico. (Doc. No. 16-3). The plaintiff later nonsuited the Texas case and refiled his lawsuit against Conoco in New Mexico state court. (Doc. No. 26-2). Conoco then sent Totem a demand letter for defense and indemnification for the underlying litigation—citing the indemnification provision in the MSA. (Doc. No. 25-2 at 3). After Totem refused to comply with its demand, Conoco sued Totem in Texas state court, and the case was properly removed to this Court. *See generally* (Doc. No. 1). Conoco requests this Court to issue a declaratory judgment that pursuant

---

[1] The MSA defines Company Group as "any or all of: (i) Company and its Affiliates; (ii) Coventurers in relation to the Work and their affiliates; (iii) Company's other contractors (other than members of Contractor Group) and their subcontractors of any tier who are engaged directly or indirectly by Company to perform work or services for the project to which the Work relates or are otherwise present during Contractor's performance of the Work, and their Affiliates; and (iv) the respective agents of any of the entities addressed in (i) through (iii) above; all the foregoing being 'members of Company Group.'" (Doc. No. 25-1 at 6).

The MSA defines Contractor Group as "any or all of: (i) Contractor and its Affiliates; (ii) Subcontractors and their Affiliates; and (iii) the respective agents of any of the entities addressed in (i) and (ii) above; all the foregoing being 'members of the Contractor Group.'" (*Id.*).

to the MSA, Totem is required to provide defense and indemnity for the underlying litigation. (Doc. No. 13).

After a round of summary judgment briefing, the Court issued an Order that identified three questions that must be answered to resolve this contract interpretation dispute: (1) "whether § 21.3 is a valid disclaimer of the Texas Oilfield Anti-Indemnity Statute, and, if so, what is the result of its application to this dispute;" (2) "which state's law did the parties agree would govern the scope of the indemnity obligation;" and (3) "whether the parties' choice of law is enforceable for this indemnity dispute." (Doc. No. 22 at 5). While the Court declined to address issue one in its prior Order, the Court held that the intention of the parties was to apply Texas law generally to the MSA, including the intent to apply Texas's choice of law principles. (*Id.* at 7). Nevertheless, the Court held that there was insufficient summary judgment evidence to determine whether the Texas choice-of-law principles require this Court to apply Texas law or New Mexico law to this dispute. (*Id.* at 11). As a result, the Court requested additional briefing, and in response, Conoco and Totem filed competing motions for summary judgment.

In addition to the indemnity clause, the MSA included three provisions relevant to the choice-of-law dispute:

> 21.1 **The interpretation and performance of this Agreement** and any Call-Off Order in relation thereto, and any dispute or Claim in connection with (i) this Agreement or any Call-Off Order in relation thereto or (ii) their subject matter or formation (including non-contractual disputes or Claims), are **governed by and to be construed in accordance with the laws of the State of Texas, except for any rule or law of the State of Texas that would make the law of any other jurisdiction applicable**. For Work performed offshore, this interpretation and performance of this Agreement and each Call-Off Order are governed by and to be construed in accordance with the general maritime law of the United States, or, if impermissible, with the laws of the State of Texas.
>
> 21.2 Specifically, if any provision of this Agreement or a Call-Off Order is determined to be unenforceable or in contravention of any Applicable Laws, such provision is to be deemed modified to the minimum extent required to bring such

3

provision into compliance with Applicable Laws. NOTHING CONTAINED HEREIN IS TO BE CONSTRUED AS CONTRAVENING THE EXPRESS INTENTION OF THE PARTIES THAT THE LAWS OF THE STATE OF TEXAS ARE TO APPLY IN ALL RESPECTS.

21.3 For the avoidance of doubt, the Texas Oilfield Anti-Indemnity Statute, V.T.C.A., Civil Practice & Remedies Code 127.000 et seq. and its amendments do not apply to Work performed outside the State of Texas.

(Doc. No. 25-1 at 51) (emphasis added).[2]

Relying on the provisions in the MSA and the choice-of-law principles adopted in Texas, Conoco contends that that Texas law applies to Totem's indemnity obligation and requires the Court to declare that Totem has a duty to defend and indemnify Conoco, "as well as Conoco's contractors and subcontractors, from and against all claims relating to the" underlying New Mexico and now-dismissed Texas suits. (Doc. No. 25). In opposition, Totem contends that the Texas choice-of-law principles require this Court to apply New Mexico law to the MSA. Next, Totem argues that if New Mexico law applies, then Totem has no duty to defend or indemnify Conoco because the indemnification provision is void as violative of the public policy of New Mexico.

This Court hereby addresses the choice-of-law dispute and finds that the choice-of-law principles adopted in Texas require this Court to apply New Mexico state law to the MSA.

---

[2] The Court addressed the relevance of these provisions to this litigation in its previous Order. (Doc. No. 22 at 7) ("The Court finds that the plain language of the clause 'except for any rule or law of the State of Texas that would make the law of any other jurisdiction applicable' clearly anticipates a situation where the law of a jurisdiction other than Texas may govern a dispute arising under the MSA. . . . [T]he same clause provides an exception that unambiguously allows another jurisdiction's law to apply where a rule or law of the State of Texas would require the application of some other jurisdiction's law, i.e., Texas's choice-of-law rules.").

4

## II. LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In support of a motion for summary judgment, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 252, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the court to search the record for evidence that might establish an issues of material fact. *Id.*

## III. ANALYSIS

This Court must determine, as a matter of law, whether the choice-of-law principles adopted by the State of Texas require this Court to apply the law of Texas or New Mexico to this

dispute. First, the Court must determine whether there is an actual conflict between Texas and New Mexico law, as it applies to this dispute. *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004). Second, the Court must follow the choice-of-law analysis adopted by Texas courts to determine which law applies. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).

### A. There is an actual conflict between Texas and New Mexico state law.

The Court finds that there is an actual conflict between Texas and New Mexico state law regarding the validity of oilfield indemnification clauses. Generally, a court need not decide which state's laws apply unless those laws conflict. *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004). Under Texas law, oilfield indemnity clauses are typically invalid unless the requirement is mutual and supported by liability insurance. TEX. CIV. PRAC. & REM. CODE § 127.005. New Mexico also finds these indemnification clauses to be invalid, but unlike the Texas Legislature, the New Mexico Legislature has not enacted a corresponding insurance exception that exempts certain oilfield indemnity agreements from this general prohibition. N.M. STAT. ANN. § 56-7-2(A). Instead, all oilfield indemnity agreements are unenforceable without exception. *Id.* The heart of this dispute is whether the oilfield indemnification provision is enforceable, and the answer to that question turns on which state law controls the interpretation. As such, the laws of Texas and New Mexico are squarely in conflict in their application to this litigation, and this Court must proceed with the choice-of-law analysis.

### B. The choice-of-law principles in Texas require this Court to apply New Mexico law to the MSA.

In resolving this dispute, this Court must apply the choice-of-law principles adopted by Texas. (Doc. No. 22 at 7). The Supreme Court of Texas has adopted § 187 of the Restatement (Second) of Conflict of Laws to determine the appropriate choice of law. *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324–25 (Tex. 2014) (citing *DeSantis*, 793 S.W.2d at 677–78). Section

6

187(2) of the Restatement provides that the "law of the state chosen by the parties to govern their contractual rights and duties will be applied," unless:

> application of the law of the chosen state would be contrary to a fundamental policy of a state which has a **materially greater interest** than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF L. § 187(2)(b) (A.L.I. 1971) (emphasis added). Under these guidelines, the Supreme Court of Texas has provided a framework for courts determine the correct choice of law. *DeSantis*, 793 S.W.2d at 678.

Using this framework, three things must be true for New Mexico law to "override" the parties' express adoption of Texas law. First, New Mexico must have a "more significant relationship" with the parties and transaction than Texas does. *Id*. Second, New Mexico must have a "materially greater interest" than Texas in applying its law to this set of facts. *Id.* Third, applying Texas law must be contrary to a fundamental policy of New Mexico. *Id.*; *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 325–27 (Tex. 2014). If the Court finds that even one of the three factors favors the Parties' choice of Texas law, the Court need not examine the remaining two. *Gator Apple, LLC v. Apple Tex. Rest., Inc.*, 442 S.W.3d 521, 533 (Tex. App.—Dallas 2014, no pet.); *Cannon Oil & Gas Well Servs., Inc. v. KLX Energy Servs., L.L.C.*, 20 F.4th 184, 189 (5th Cir. 2021) (finding that the Restatement requires all three factors to favor another state's law in order to override the parties' choice of Texas law).

### 1. New Mexico has a "more significant relationship" to the parties and the transaction.

First, to overcome to parties' choice of Texas law, New Mexico must have a "more significant relationship" to Conoco, Totem, and their MSA. RESTATEMENT at § 188. Section 188 requires courts to consider (1) the contacts enumerated in that section and (2) the general principles

listed in § 6 of the same Restatement. *DeSantis*, 793 S.W.2d at 679; *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 233 (Tex. 2008). The Court separately addresses each of these categories to determine which state has a "more significant relationship" to this litigation.

(a) The Restatement's Section 188 Contacts

The Court will first address the contact points set out in § 188. Section 188 directs the Court to analyze various points of contact and "their relative importance with respect to the particular issue." RESTATEMENT at § 188(2). These contacts, specific to contract disputes, include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract,

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id.* The contacts are weighed "not by their number, but by their quality." *Minn. Mining Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996).

Both parties consider the first two factors—the place of contracting and the place of negotiation—together but arrive at different conclusions. Totem provided a sworn affidavit from the owner, Julian Carrillo. He swore that Totem negotiated the MSA at its office in Artesia, New Mexico. (Doc. No. 26-5 at 1). He also swore that no Totem representative traveled to Texas to negotiate the MSA with Conoco. (*Id.*). Carrillo further swore that when he executed the MSA on behalf of Totem, he was in New Mexico. (*Id.*). On this same issue, Conoco provided a sworn affidavit of Kelly Wink, a manager at Conoco. Wink swore that Conoco negotiated the MSA in Houston, Texas. (Doc. No. 25-2 at 1). He also swore that Conoco executed the MSA in Midland, Texas. (*Id.*). It is undisputed that Conoco drafted the MSA in Texas. (*Id.*; Doc. No. 25 at 11).

8

From the evidence regarding the place of contracting and negotiating, the score is evenly split between Texas and New Mexico. After all, Totem negotiated and signed the contract in New Mexico, and Conoco negotiated and signed the contract in Texas. Nevertheless, Conoco argues that "[t]he place of contracting is technically Texas, as the last signature was added there." *Sonat*, 271 S.W.3d at 233. While this fact may give Conoco a slight edge, the Supreme Court of Texas has also noted that the place of contracting and negotiation is "relatively insignificant" when there is no one single place. *Id.* Contracting and negotiation can take place in multiple locations, such as when the parties "conduct their negotiations from separate states by mail or telephone." *Id.* (citing RESTATEMENT at § 188, cmt. e). As such, the Court recognizes that a possible tiebreaker might be the location of the "last signature" but nonetheless finds these factors to be less compelling and therefore continues the analysis.

Section 188 lists the "place of performance" as the third factor. While the *Sonat* court determined that many of the Section 188 contacts lack significance when the contract contemplates services in several states, Section 196 of the Restatement[3] "makes the place of performance of 'paramount importance'" when the service contract involves a single state. *Id.* at 234 (citing RESTATEMENT at § 196). Nevertheless, the *Sonat* court explained that Section 196 "does not apply to contracts [that] contemplat[e] services in many states." *Id.* The *Sonat* court references one of the comments to Section 196, which states that:

> [t]he rule this Section applied if the major portion of the services called for by the contract **is to be rendered in a single state and it is possible to identify this state at the time the contract is made**. It is necessary that the contract should state

---

[3] Section 196 states that "[t]he validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which the event the local law of the other state will be applied." RESTATEMENT at § 196.

9

> where the **major portion of the services** is to be rendered or that this place can be inferred either from the contract's terms or from the nature of the services involved or from other circumstances. For this reason, **the rule of this Section is unlikely to aid in the determination of the law . . . when the work called for by the contract can be done in any one of two or more states.**

RESTATEMENT at § 196, cmt. a (emphasis added). Here, the parties agree that the majority of the work performed by Totem has occurred in New Mexico—not Texas. Understandably, Totem relies on the place of performance to argue that the work in New Mexico should be of "paramount importance" to determine the appropriate state law. While it may be true that the work was largely performed in New Mexico after the execution of the MSA, the agreement itself is silent as to where the work was to be performed. *See* (Doc. No. 25-1). It is not possible to determine from the face of the agreement "where the major portion of the services is to be rendered." RESTATEMENT at § 196, cmt. a. The location of the "major portion of the services" cannot even be inferred from the terms nor from the nature of the agreement. On its face, the MSA could have been discussing work on Texas wells, New Mexico wells, both, or neither. While hindsight certainly illuminates that the "major portion of the services" was performed in New Mexico, the terms of the MSA did not restrict the work to any one state. Following the guidance of the Restatement, one must conclude that the "place of performance" was not specified, and due to its absence in the contract, it is not of any "paramount importance" to this analysis.

While this factor may not be of "paramount importance," the Court still must assess the "place of performance" factor one way or the other. Intermediate Texas appellate courts have viewed the "relevant place of performance in indemnity cases" as "the forum where the personal injury lawsuit is pending." *Cannon Oil*, 20 F.4th at 190 (citing *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 170 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Banta Oilfield Servs., Inc. v. Mewbourne Oil Co.*, 568 S.W.3d 692, 711–12 (Tex. App.—Texarkana

10

2018, pet. denied). The Supreme Court of Texas has not decided whether the relevant place of performance in indemnity cases is "where the drilling or the suing takes place." *See Sonat*, 271 S.W.3d at 234. In this case, the site of the "drilling" and the "suing" is the same place: New Mexico. The underlying litigation is pending in New Mexico, and the location of the alleged injuries was on a drill site in New Mexico. The Court finds that this factor, while not of "paramount importance" to this choice-of-law analysis, falls in favor of New Mexico.

Section 188 next contemplates the location of the contract's subject matter. For service contracts (like the MSA), "the location of the subject matter largely overlaps with the place of performance." *Cannon Oil*, 20 F.4th at 190. Thus, the Court resolves this factor in favor of New Mexico, as well.

Lastly, § 188 contemplates the "place of business" factor. In this case, the score is even. Conoco is headquartered in Texas. Totem is domiciled in New Mexico. Conoco and Totem conduct business in their relative states, and the analysis is at a stalemate. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 581, 583 (5th Cir. 2015) (noting that Texas headquarters of one party were cancelled out by Oklahoma presence of the other). Thus, this factor has no bearing on the analysis.

On balance, the § 188 points of contact favor the application of New Mexico law. As recognized by Texas courts, the "place of performance" emphasizes the place of the "drilling" and the "suing." Here, both the venue of the underlying litigation and the location of the alleged injuries are in New Mexico. Moreover, the "place of contracting," "place of negotiation," and the "place of business" drew a dead-even score. Recognizing Conoco's argument that the "last signature" in Texas may be a potential tiebreaker, the Court adheres to the Supreme Court of Texas's guidance that the points of contact must be weighed "not by their number, but by their quality." *Minn. Mining Mfg. Co.*, 955 S.W.2d at 856. Whether Conoco or Totem last signed the MSA—on balance with

the other § 188 contacts—cannot be dispositive in this choice-of law analysis. Thus, on balance, the § 188 points of contact weigh in favor of applying New Mexico law to the MSA because the quality of the contacts strongly favors New Mexico.

Section 188, however, is only the first step in determining whether New Mexico has a "more significant relationship" to this litigation than Texas. Adhering to the Supreme Court of Texas's choice-of-law framework, the Court turns next to the factors listed in § 6 of the Restatement.

(b) The Restatement's § 6 Factors

The Texas choice-of-law analysis next turns to § 6 of the Restatement. The Supreme Court of Texas has advised that in determining the "most significant relationship to the transaction and the parties," courts must also account for the "basic conflict of laws principles in § 6 of the Restatement." *DeSantis*, 793 S.W.2d at 678. Section 6 provides "general principles" that serve as "the background considerations that underlie 'the more specific rules' in the Restatement . . . for contract (section 188)." *Cannon Oil*, 20 F.4th at 191. While "Texas law is unclear on whether we must separately consider the § 6 factors or whether we can instead assume that the § 188 contracts are sufficient . . . in the contract context," *Cannon Oil*, 20 F.4th at 192, this Court nonetheless chooses to address the general governing principles of the Texas choice-of-law analysis.

Section 6 lists the "factors relevant to the choice of the applicable rule of law" as:

(a) the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT at § 6(2). Nevertheless, the Restatement identifies only one of these factors as the most significant in contract cases like the case at bar: the "protection of the justified expectations of the parties is the basic policy underlying the field of contracts." *Id.* at § 188 cmt. b. Texas courts regularly rely on the "justified expectations" principle to guide the "most significant relationship" analysis. *Sonat*, 271 S.W.3d at 233. At the most basic level, the "justified expectations" factor emphasizes that when parties enter into an agreement, they should expect to be bound by its terms. *Cannon Oil*, 20 F.4th at 192. "Enforcing contracts according to their own terms satisfies the relevant policies of the forum, enhances certainty, predictability, and uniformity of result, and facilitates commerce and relations with other states and nations." *Sonat*, 271 S.W.3d at 235. "The parties' expectations as stated in their contract should not be frustrated by applying a state law that would invalidate the contract, at least not unless those expectations are substantially outweighed by the interests of the state with the invalidating rule." *Id.*

In this case, the MSA generally adopted the application of Texas law. The MSA contained express provisions adopting Texas law. (Doc. No. 25-1 at 51) ("NOTHING CONTAINED HEREIN IS TO BE CONSTRUED AS CONTRAVENING THE EXPRESS INTENTION OF THE PARTIES THAT THE LAWS OF THE STATE OF TEXAS ARE TO APPLY IN ALL RESPECTS."). The Parties also intentionally included the indemnification clause and agreed to support their indemnity obligations with insurance. (*Id.* at 45). Conoco argues that the express language adopting the application of Texas law and the agreement to include the indemnification clause support the fact that the Parties intended to enforce the indemnification agreement. After all, assuming compliance with insurance requirements, the application of Texas law would allow

13

the enforcement of the indemnification provision, whereas New Mexico law would not. Conoco argues that this difference should be dispositive of the choice-of-law issue: the Parties would not have entered into an agreement without an intention to enforce the included provisions.

The Court looks to *Cannon Oil* for instruction. In *Cannon Oil*, the Fifth Circuit analyzed the "justified expectations" factor in § 6 of the Restatement to determine whether to apply Texas or Wyoming law to the subject agreement. *Cannon Oil*, 20 F.4th at 192. There, Cannon Oil argued that protecting the justified expectations of the parties should be the most important principle in the choice-of-law analysis. *Id.* Like Conoco, Cannon Oil pointed to the express indemnification clause and the fact that the parties acquired liability insurance to support their indemnity obligation. *Id.* Nevertheless, the Fifth Circuit determined that the "clues that Cannon [Oil] offers to explain the parties' expectations are not as one-sided at they appear on the surface." *Id.* First, the contract required the parties to acquire insurance for other obligations—not just for the indemnity provision. *Id.* Second, parties should "generally expect that the law of the place of negotiation, contracting, and performance . . . will govern," and the Cannon Oil agreement was negotiated, contracted, and performed in Wyoming. *Id.* Despite the flaws in Cannon Oil's argument, the Fifth Circuit still determined that the "justified expectations" factor weighed in favor of applying Texas law because of the express indemnification clause.

The analysis in this case is similar. The express indemnification clause and the express adoption of Texas law clearly communicate the parties' expectations of the agreement. While Conoco (like Cannon Oil) points to the acquired insurance as further support, the Court finds that the evidence is not strong enough to move the needle any further. After all, like *Cannon Oil*, the MSA requires the parties to broadly acquire insurance—not to acquire specific insurance for the

14

specific indemnity obligation. *See* (Doc. No. 25-1 at 44–45). Thus, the acquisition of insurance is not strong evidence of an intent to enforce the provision.

One difference between this case and *Cannon Oil*, however, is where the agreement was negotiated, contracted, and performed. The agreement in *Cannon Oil* was negotiated, contracted, and performed in Wyoming—clearly outside of Texas. Here, the MSA was not negotiated, contracted, or performed in a single location. *See supra* subsection B(1)(a). Instead, Conoco (operating in Texas) and Totem (operating in New Mexico) negotiated and contracted across state lines, and the MSA did not specify a place of performance. Nevertheless, the MSA was indisputably *drafted* in Texas. (Doc. No. 25-2 at 1). While the Fifth Circuit parties should "generally expect that the law of the place of negotiation, contracting, and performance" to govern, the Fifth Circuit and the § 188 places of contact are silent as to the so-called "place of drafting." Even assuming the "place of drafting" tips the scale in favor of applying Texas law, the outcome of the "justified expectations" factor does not change. The *Cannon Oil* agreement was negotiated, contracted, and performed in Wyoming, and the Fifth Circuit still held that the "justified expectations" factor weighed in favor of applying Texas law. Here, there is no single place of negotiation, contracting, or performance, yet the express language in the agreement and the place of drafting support that the Parties likely had the "justified expectations" for Texas law to govern the MSA. This factor weighs—even more so than in *Cannon Oil*—strongly in favor of Texas.

Even if the "protection of justified expectations favors applying Texas law," the Supreme Court of Texas has advised that the expectations of the parties "can be overcome if they are 'substantially outweighed by the interests of the state with the invalidating rule.'" *Sonat*, 271 S.W.3d at 235; *Cannon Oil*, 20 F.4th at 193. This inquiry invokes the remaining principles of § 6, emphasizing the policies of conflicting forums—*i.e.*, the policies of New Mexico. *Cannon Oil*, 20

15

F.4th at 193 (citing RESTATEMENT at § 6(2)(b), (c)). When courts have reached this stage in the analysis, courts have combined the discussion with the "materially greater interest" (the second factor in the Texas framework) analysis. *Id.* at 193 ("This [§ 6] inquiry, duplicative of the 'materially greater interest' analysis we are about to conduct, cuts sharply in Wyoming's favor."). The Court will do the same here.

### 2. New Mexico has a "materially greater interest" than Texas, and this interest "substantially outweighs" the justified expectations of the parties.

This Court must next determine whether New Mexico has a "materially greater interest" in this litigation than Texas, and if so, whether New Mexico's interest substantially outweighs the justified expectations of the parties. The "materially greater interest" analysis can turn on the implication of state public policy and the interest of the state in the underlying litigation. *Cannon Oil*, 20 F.4th at 194; *DeSantis*, 793 S.W.2d at 679. The Court reviews the relative interests of Texas and New Mexico in the underlying personal injury lawsuit and determines that New Mexico clearly has a materially greater interest than Texas.

New Mexico has a strong public policy against the enforcement of oilfield indemnification agreements. The state legislature banned oilfield indemnity provisions "to promote safety" so that oil and gas companies "will have an incentive to monitor the safety of the operation knowing that they will be responsible for their respective percentage of negligence." *Guitard v. Gulf Oil Co.*, 670 P.2d 969, 973 (N.M. Ct. App. 1983). In this case, the underlying personal injury litigation involved alleged on-the-job injuries at a well site, which is exactly the subject matter of New Mexico's outright ban on oilfield indemnification. (Doc. No. 26-2). Not only does New Mexico have an interest in protecting oilfield workers in the State, New Mexico has an interest in applying its own law to cases in its jurisdiction regarding oilfield indemnification. Such a strong public

16

policy against the enforceability of these types of agreements, along with the underlying litigation filed in its own state court system, gives a New Mexico a strong material interest in the case.

On the other hand, Texas has a clear interest in enforcing the contract of one of its businesses. *Cannon Oil*, 20 F.4th at 194. Conoco is a Texas company and the MSA was drafted in Texas. Nevertheless, now that the underlying Texas litigation has been dismissed and refiled in New Mexico, contractual enforcement is the only connection Texas has to this case. While Texas has some interest in this dispute, this interest far more attenuated than the interest of New Mexico to enforce the strong public policy and apply New Mexico law to litigation in its state court system. If this Court were to apply Texas law and enforce the indemnity provision, the Court would possibly discourage exactly what New Mexico hopes to encourage—an increase in oil and gas companies monitoring the safety of oil operations to avoid injuries to those in the field.

This analysis once again largely tracks the Fifth Circuit's decision in *Cannon Oil*. There, the Fifth Circuit held that the State of Wyoming had an interest in an indemnity matter that was materially greater than the State of Texas due to Wyoming's strong public policy against oilfield indemnification. *Id.* at 193 ("Wyoming bans oilfield indemnity provisions so that oil and gas companies 'internalize the costs of their own operations' and become 'more mindful of employee safety'"). In fact, New Mexico courts have compared New Mexico's Oilfield Anti-Indemnity Act with the Wyoming statute. *See, e.g., XTO Energy, Inc. v. ATD, LLC*, 2016 WL 1158073, at *20 (D.N.M. Mar. 11, 2016) (noting that "New Mexico courts seek to make each party responsible for their own fault and cite Wyoming case law [regarding its anti-indemnity act] favorably"). Though the contract in *Cannon Oil* was drafted in Texas, the analysis in *Cannon Oil* offers significant instruction on how this Court should place a significant amount of weight on New Mexico's strong

public policy against oilfield indemnification agreements. After all, the underlying New Mexico case "implicates [New Mexico's] policy with precision." *Id.* at 194.

The Fifth Circuit extended this analysis to hold that Wyoming's interest in the litigation substantially outweighed the expectations of the parties that Texas law would apply to the agreement. *Id.* at 193. This inquiry is relevant to the balance of the § 6 principles in the first step of the Texas choice-of-law framework discussed above. The court *Cannon Oil* court wrote that "Wyoming's concern that indemnity undermines safety has great force in a dispute seeking indemnification for an injury to one of its residents in one of its oilfields," and as such, Wyoming's interest substantially outweighed the expectations of the parties to apply Texas law. *Id.* In this case, New Mexico has a significant interest in the enforceability of indemnification clauses, as the State has determined that those agreements make the oilfields less safe for New Mexico residents. Relying on the analysis in *Cannon Oil*, the Court holds that this interest does "substantially outweigh" the justified expectations of the parties. Thus, despite the justified expectations of the parties, the § 188 and § 6 factors weigh in favor of applying New Mexico law to this agreement.

For the foregoing reasons, the Court finds that New Mexico has a materially greater interest in the underlying litigation. Not only does New Mexico have a materially greater interest, but New Mexico's interest "substantially outweighs" the justified expectations of the parties, and thus, on balance, New Mexico has a "more significant relationship" to this case. Totem has therefore demonstrated that the first two requirements of the Texas choice-of-law analysis have been satisfied in favor of applying New Mexico law to the MSA.

### 3. The application of Texas law would contravene a fundamental policy of New Mexico.

Finally, this Court must determine whether applying Texas law—as expressly adopted by the parties—would contravene a fundamental policy of New Mexico. *Cardoni*, 805 F.3d at 585

(citing *DeSantis*, 793 S.W.2d at 679). The contractual agreement to the choice of law should be disregarded only if it would "thwart or offend the public policy" of another state, but "not if it would merely require a different result." *Chesapeake*, 94 S.W.3d at 178. The Court finds that the application of Texas law would certainly thwart the goals of the New Mexico Oilfield Anti-Indemnity Act.

As discussed at length in the preceding section, the New Mexico Oilfield Anti-Indemnity Act declares oilfield indemnification agreements void and unenforceable as a matter of public policy. N.M. STAT. ANN. § 56-7-2 ("An agreement, covenant or promise, foreign or domestic, contained in, collateral to or affecting an agreement pertaining to a well for oil, gas or water, or mine for a mineral, within New Mexico, that purports to indemnify the indemnitee against loss or liability for damages arising from [the indemnitee's negligence] is against public policy and is void."). In Texas, however, the state legislature carved out an exception to the blanket ban on these agreements. TEX. CIV. PRAC. & REM. CODE § 127.005 ("This chapter does not apply to an agreement that provides for indemnity if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage."). The application of this exception would clearly contravene the express public policy in New Mexico against indemnification.

At least one New Mexico state court has observed the fundamental dissonance between the two statutes. There, the court wrote that "the Texas anti-indemnity statute is **fundamentally inconsistent** with important New Mexico policy as expressed in Section 56-7-2." *Piña v. Gruy Petroleum Mgmt. Co.*, 136 P.3d 1029, 1034 (N.M. Ct. App. 2006) (emphasis added). Since New Mexico "has taken the unusual step of stating [the policy] explicitly" in a statute, *Chesapeake*, 94 S.W.3d at 178, and "will refuse to enforce an agreement" contrary to the policy even when other states connected to the agreement would enforce it, *DeSantis*, 793 S.W.2d at 680, the anti-

19

indemnity policy is a fundamental one. There is no doubt that the application of the Texas statute would contravene this fundamental policy.

This concludes the lengthy analysis of the application of the Texas choice-of-law principles to this case. While there was a close call on the first factor (whether New Mexico has a more significant relationship than Texas), the Court holds that by weighing the factors "not by their number, but by their quality," *Minn. Mining Mfg. Co.* 955 S.W.2d at 856, New Mexico has a more significant relationship to this case. The Court holds that Totem demonstrated that each of the three required factors weigh in favor of applying New Mexico law, and as such, New Mexico law will control this dispute.

## IV. CONCLUSION

The Court holds as a matter of law that New Mexico law applies to the parties' indemnity dispute, and that its Oilfield Anti-Indemnity Act disallows Conoco's claim for indemnification. Accordingly, Conoco's Motion for Summary Judgment is **DENIED** and Totem's Motion for Summary Judgment is **GRANTED.** The Court is unaware of any other issue that needs to be resolved before it enters final judgment. Counsel are to confer and to inform the Court by a joint letter if there are any other issues to be resolved, and what those issues are. If there are no such issues, counsel for Totem Well Service, LLC shall prepare an agreed Final Judgment (counsel for ConocoPhillips Company may agree as to "Form Only") and file it for the Court's review within ten (10) days of this Order.

It is so ordered.

Signed on this the ⎯6th⎯ day of November 2025.

Andrew S. Hanen
United States District Judge