## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CONOCOPHILLIPS COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-3383 |
| | § | |
| TOTEM WELL SERVICE, LLC, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## ORDER

This is a contract interpretation dispute over an oilfield indemnification clause. Plaintiff ConocoPhillips Company ("Conoco") (the well operator) alleges that Defendant Totem Well Service, LLC ("Totem") (the contractor) has a duty to indemnify and to defend Conoco in an ongoing personal injury lawsuit in New Mexico state court. This Court has previously held as a matter of law that the choice-of-law principles adopted in Texas (which the Court used because the Master Services Agreement ("MSA") specifies that Texas law controls) require this Court to apply New Mexico law to the MSA between Conoco and Totem, and as such, the New Mexico Oilfield Anti-Indemnity Act voids the MSA's indemnification clause. (Doc. No. 28). Accordingly, the Court held that Totem does not have the duty to indemnify Conoco. (Doc. No. 28). Conoco has filed a Motion for Reconsideration of that ruling, and Totem responded. (Doc. Nos. 33, 37). Upon close reconsideration of the pleadings and relevant legal standards, the Court **DENIES** Conoco's Motion for Reconsideration, (Doc. No. 33), and holds again as a matter of law that the choice-of-law principles adopted in Texas require this Court to apply New Mexico law to this dispute.

Reaffirming that New Mexico law controls this dispute, this Court turns next to the issue related to the duty to defend. Following the ruling that New Mexico law applies to the MSA, the Parties filed supplemental briefing on whether New Mexico state law also bars the claim that Totem has the duty to

defend Conoco in the underlying personal injury litigation. (Doc. Nos. 32, 35, 36). Upon close consideration of the supplemental briefing and relevant legal standards, the Court finds that there is no genuine dispute of material fact that New Mexico state law voids the duty to defend in the underlying personal injury litigation.

## I.    Motion for Reconsideration

Conoco initially requests this Court to reconsider its holding that New Mexico state law applies to the MSA. The MSA states that "[t]he interpretation and performance of this Agreement . . . are generally governed by and to be construed in accordance with the laws of the State of Texas." (Doc. No. 26-1 at 51). After Conoco and Totem each filed a Motion for Summary Judgment on whether Texas or New Mexico state law should apply to the MSA, (Doc. Nos. 25, 26), this Court, due to the choice-of-law provision in the MSA and the agreement of the Parties, applied the choice-of-law principles adopted in Texas to the facts and circumstances of this case. (Doc. No. 28).

In situations such as this, the Supreme Court of Texas has adopted the approach set out in § 187 of the Restatement (Second) Conflict of Laws (the "Restatement") to determine the appropriate choice of law. *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 219, 324-25 (Tex. 2014). After reviewing each of the factors set out in the Restatement, and while recognizing that some of the factors within this fact-intensive inquiry were a close call, the Court held that "each of the three required factors weigh in favor of applying New Mexico law, and as such, New Mexico law will control this dispute." (*Id.* at 20). In the Motion for Reconsideration, (Doc. No. 33), Conoco argues the Court erred in its analysis of two choice-of-law factors and that the policy concerns in the Permian Basis should persuade this Court to alter its holding.[1] Given

---

[1] While most Texans immediately think of the Midland-Odessa area when the phrase "Permian Basin" is used, the Basin, for most oil and gas purposes, actually extends hundreds of miles in all directions and crosses into southeastern New Mexico. U.S. ENERGY INFORMATION ADMINISTRATION, *Two counties in New Mexico account for 29% of Permian Basin crude oil production*, https://www.eia.gov/todayinenergy/detail.php?id=57020 (July 6, 2023) ("In southeastern New Mexico,

that the Court closely considered each of these arguments in its previous order, the Court briefly addresses

the arguments and denies the Motion for Reconsideration. (Doc. No. 33).

## A. Place of Performance

Conoco first argues that this Court erred when it held that the "place of performance" factor "falls

in favor of New Mexico." (Doc. No. 28 at 11). While the Court determined that the "[i]ntermediate Texas

appellate courts have viewed the 'relevant place of performance in indemnity cases' as 'the forum where

the personal injury lawsuit is pending,'" (*id.* at 10), Conoco argues the "place of performance" should

instead be the forum where the indemnity dispute is pending. *See* (Doc. No. 33 at 5) (relying on

*Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 170 (Tex. App.—Houston [14th

Dist.] 2002, no pet.) and *Banta Oilfield Servs. V. Mewbourne Oil Co.*, 568 S.W.3d 692, 711-12 (Tex.

App.—Texarkana 2018, pet. denied)). Conoco argues that in *Chesapeake* and *Banta*, the Texas

intermediate courts actually put the emphasis on the location of the indemnification dispute—not the

personal injury lawsuit—to determine the "place of performance." Accordingly, Conoco contends that,

despite the fact that the personal injury case is pending in New Mexico, the "place of performance" should

be Texas because the indemnity lawsuit is pending in this Court. The Court finds, as it did before, that the

holdings in *Chesapeake* and *Banta* are not definitive—especially when considered alongside the more

recent Fifth Circuit precedent in *Cannon Oil and Gas Well Servs. v. KLX Energy Servs., L.L.C.*, 20 F.4th

184 (5th Cir. 2021).

Given that the *Banta* court primarily relies on the earlier holding in *Chesapeake*, the Court first

turns to the "place of performance" analysis in *Chesapeake*. There, the underlying personal injury lawsuits

*and* the indemnification disputes were in the same cases in Texas state court. *Chesapeake*, 94 S.W.3d at

---

horizontal wells in Lea and Eddy counties drove much of the recent growth in Permian Basin crude oil
output. Output from horizontal wells in the two counties accounted for 29% of all crude oil production in
the Permian Basin in the first quarter of 2023 . . . .").

167 (explaining that instead of filing a separate indemnification lawsuit, the indemnitee filed a cross-action against the alleged indemnitor). Faced with the task of defining "the place of performance" as "where the drilling services were performed" or "where the indemnity obligation was performed," *id.* at 171, the *Chesapeake* court relied upon the Supreme Court of Texas's decision in *Maxus Expl. Co. v. Moran Bros. Co., Inc.*, 817 S.W.2d 50, 52 (Tex. 1991). The *Chesapeake* court noted that the Supreme Court, in a case with no choice-of-law provision, found that the "place of performance" was of "paramount importance." *Chesapeake*, 94 S.W.3d at 171 (quoting *Maxus*, 817 S.W.2d at 53). The *Maxus* court found that there were two possible meanings of "the place of performance," which were "(1) where the drilling services were performed, or (2) where the indemnity obligation was performed (***by defending against the injured employee's lawsuit***)." *Id.* (emphasis added). As the *Chesapeake* court noted, however, the Supreme Court in *Maxus* did not have to decide the issue because both the "drilling and the suing" occurred in Kansas. In the case at bar, both took place in New Mexico.

Relying on the guidance provided in *Maxus* and the fact that "[f]or the last four years, the only fight has been over performance of the indemnities," *id.*, the *Chesapeake* court held that "[w]hat is determinative is which state has the most significant relationship *with respect to the indemnity issue*," or phrased differently by the court, which state is the forum of the "***indemnity obligation***." *Id.* at 173 (emphasis added). Based on the facts of that case, the *Chesapeake* court concluded that because the underlying claim was "for liability and legal services incurred in Texas" and "not for drilling services performed in Louisiana," "the place of performance of that obligation was in Texas." *Id.* at 172. Importantly, though, the *Chesapeake* court did not make any distinction as to whether the location of the personal injury suit or the indemnification lawsuit is more relevant to the "place of performance" inquiry

4

due to the fact that, unlike the facts in this case, the parties were litigating the liability and indemnification issues in the same Texas state court cases.[2]

Applying the logic in *Chesapeake*, as also set out by the Supreme Court of Texas in *Maxus*, to the facts in this case, the two possible places of performance in this case are (1) where the drilling services were performed (New Mexico) or (2) where a defense (and possible indemnification) needed to be provided against the injured person's lawsuit (New Mexico). Consequently, under the test set out by the *Chesapeake* court, the result is that the "place of performance" is New Mexico, regardless of which prong one chooses to apply to this set of facts.[3]

Six years later, the Supreme Court of Texas again addressed the "place of performance" factor in a choice-of-law analysis. In *Sonat Exploration Company v. Cudd Pressure Control, Inc.*, the Supreme Court of Texas specifically reserved the question as to "whether the place of performance is where the

---

[2] The *Chesapeake* case was actually a consolidated appeal concerning two cases involving two different workers that were injured on the same drilling rig in Louisiana. One case was filed in Harris County, Texas, while the other case was filed in Brazoria County, Texas. After both cases went on appeal, the appellate court consolidated the two cases to address this choice-of-law issue. This procedural posture does not affect the analysis here, as in both cases, it was a Texas court deciding both the liability questions and the indemnity question.

[3] Interestingly, the dissent in *Chesapeake* argued for a different test, which the majority summarizes as follows:

> Chesapeake urges us to adopt the other option in *Maxus*—that the place of performance **is the state where the drilling services were performed**. This whole-contract approach to place of performance makes the particular substantive issue irrelevant. Thus, if this lawsuit concerned financing, insurance coverage, workers' compensation, taxes, transportation, or any other side agreement in the parties' drilling contract, the result would always be the same—Louisiana law governs it all.

> Our dissenting colleagues adopt this approach, arguing it will make the law more predictable because contracting parties know in advance where they are drilling, but not where they will be sued.

*Chesapeake*, 94 S.W.3d at 172 (emphasis added). Thus, under the test adopted by the majority or the test put forth by the dissent, the answer in this case would still be New Mexico.

drilling or the suing takes place" and determined that there was no single place of performance because "no single state would have 'loomed large' in the parties' minds when signing this agreement." 271 S.W.3d 228, 234 (Tex. 2008) (explaining that the court also reserved this exact question in *Maxus*). While not ultimately deciding the issue, the *Sonat* court nonetheless provided some guidance when it set out (as it did in *Maxus*, which the *Chesapeake* court later adopted) that the two options for the "place of performance" were either the jurisdiction where the drilling occurred (where the injuries took place) or the place where the "suing takes place" (where the injured individual sued). Again, in this case, the answer to both inquiries is: New Mexico.

Despite the fact, or perhaps because of the fact, that the Supreme Court expressly reserved the "place of performance" question, the *Banta* intermediate court later expanded on the holding in *Chesapeake*. 568 S.W.3d at 711. Unlike the circumstances in *Chesapeake*, however, the underlying lawsuits in *Banta* (like the instant situation) were pending in different states: the personal injury lawsuit was in New Mexico, and the indemnity lawsuit was in Texas. *Id.* Despite this material difference with the facts in *Chesapeake*, the *Banta* court still relied on the language used in *Chesapeake* and held that because "the issue . . . involves the enforceability of the indemnity provision in the MSA, and not the work that had been performed in New Mexico pursuant to that agreement," the place of performance must be the location of the indemnity dispute (and not the location of the indemnity obligation, as discussed in *Chesapeake*). 568 S.W.3d at 711. Finding that the indemnity "dispute [] has been litigated entirely in Texas," the *Banta* court held that the "place of performance" was in Texas. *Id.*[4]

---

[4] While the *Chesapeake* court phrased its ruling in terms of where the "indemnity obligation" was located, *Chesapeake*, 94 S.W.3d at 173, the *Banta* court assumed that automatically meant the location of the indemnity lawsuit. The Court notes, however, that the *Chesapeake* court relied on the Supreme Court of Texas's decision in *Maxus* to support the conclusion that the location of the indemnity obligation is the location where the underlying personal injury lawsuit is pending. *Id.* at 171 (explaining that the *Maxus* court noted that one possible meaning of the "place of performance" is "where the indemnity obligation was performed (by defending against the injured employee's suit)").

At first glance, this case appears to be factually similar to the case in *Banta*. Like the underlying litigation in *Banta*, the underlying personal injury lawsuit is in New Mexico state court, and Conoco sued Totem over the enforceability of the indemnification clause in this Court located in Texas. If this Court were to only follow the guidance in *Banta*, ignoring the facts and holdings in *Maxus*, *Chesapeake*, and *Sonat*, the Court would likely find the "place of performance" factor to favor Texas. After all, this Court is also tasked with determining the "place of performance" between the personal injury lawsuit in New Mexico state court and this indemnification dispute in Texas court. *See Banta*, 568 S.W.3d at 711 (choosing to apply Texas law because the indemnification dispute was litigated in Texas). Nevertheless, as the Court made clear in its previous order, the buck does not stop with the holding in *Banta*.[5]

Three years after the Texarkana appellate court issued its opinion in *Banta*, the Fifth Circuit weighed in on the location of the "place of performance." In *Cannon Oil*, the Fifth Circuit first emphasized that the Supreme Court of Texas "has not decided whether the relevant place of performance in indemnity cases is 'where the drilling or the suing takes place.'" 20 F.4th at 190 (quoting *Sonat*, 271 S.W.3d at 170). Then, the Circuit, relying on *Chesapeake* and *Banta*, noted that "[i]ntermediate Texas courts . . . explain[] that the central act of indemnification occurs in the forum where the personal injury lawsuit is pending." *Id.* Similar to the facts in this case and in *Banta*, the Fifth Circuit weighed the location of the indemnification lawsuit (Texas) against the location of the underlying personal injury lawsuit (Wyoming) to establish the "place of performance." *Id.* In its analysis, the Fifth Circuit chose to emphasize the location of the personal injury lawsuit. *Id.* Relying on the fact that the location of "both the drilling and the suing" in the personal injury lawsuit were in Wyoming, not Texas, the Fifth Circuit held that the "place of performance" must be

---

[5] In fact, the *Banta* court arguably rejects the reasoning in *Maxus*, *Chesapeake*, and *Sonat*.

Wyoming. *Id.* The drilling and the personal injury "suing" in this case clearly took place in New Mexico, not Texas.

This Court recognizes that the case law is conflicting. As noted, in *Banta*, the Texas intermediate court facing a personal injury lawsuit in New Mexico and an indemnification lawsuit in Texas, chose to find that the "place of performance" is where the **indemnification lawsuit** is pending. 568 S.W.3d at 711. Conversely, in *Cannon Oil*, the Fifth Circuit, facing a personal injury lawsuit in Wyoming and an indemnification lawsuit in Texas, chose to find that the "place of performance" is where the **personal injury lawsuit** is pending. 20 F.4th at 190. The Court here follows the guidance in *Cannon Oil* and finds that the "place of performance" is "the forum where the personal injury lawsuit is pending." (Doc. No. 28 at 10) (quoting *Cannon Oil*, 20 F.4th at 190). Given that the injury causing the accident and the underlying personal injury lawsuit happened in New Mexico (which would also be the location of the indemnity obligation, as described in *Chesapeake*),[6] the Court finds that the "place of performance" factor falls in favor of New Mexico. This Court is bound by Fifth Circuit precedent and therefore must follow the lead set out in *Cannon Oil*. *Ford v. Mckesson*, 171 F.4th 332, 343 (5th Cir. 2026). Even dispute the Court's obligation to adhere to the Fifth Circuit, the Court independently finds that the reasoning in *Cannon Oil* is much closer to the reasonings set out in *Maxus*, *Chesapeake*, and *Sonat* than the reasoning in *Banta*.

## B. Justified Expectations

Conoco next argues that this Court erred when it held that the "justified expectations" "factor weighs—even more so than in *Cannon Oil*—strongly in favor of Texas" but that "New Mexico's interest 'substantially outweighs' the justified expectations of the parties." (Doc. No. 28 at 15, 18). Specifically,

---

[6] Even if this Court found that the reasoning in *Banta* was superior to that of *Cannon Oil*, the Court notes that *Banta* relied heavily on the holding in *Chesapeake*, which did not expressly find whether the location of the personal injury lawsuit or the indemnification lawsuit was more important. 94 S.W.3d at 167. In fact, the *Chesapeake* court, unlike the *Banta* court, expressly noted that the location of the indemnity *obligation* was most relevant to the "place of performance" inquiry. 94 S.W.3d at 172.

Conoco contends that this Court erred in how it weighed the evidence that the Parties were required to obtain specific liability insurance to support the indemnity obligation, which Conoco argues should make the "justified expectations" factor even stronger and thus, Texas law should outweigh the interest that New Mexico has in this litigation. While the Court recognizes that its previous description of the insurance requirements in the MSA was somewhat surface-level, as outlined below, the Court nevertheless still finds that the "justified expectations" of the Parties are substantially outweighed by the interest that New Mexico has in this litigation.

The Court first addresses its previous discussion of the insurance requirements in the MSA. In its previous order, the Court noted that while "[t]he express indemnification clause and the express adoption of Texas law clearly communicate the parties' expectations of the agreement," "the MSA requires the parties to broadly acquire insurance—not to acquire specific insurance for the specific indemnity obligation." (*Id.* at 14) (relying on *Cannon Oil*, 20 F.4th at 192). The Court concluded, therefore, that "the acquisition of insurance is not strong evidence of an intent to enforce the [indemnification] provision." (*Id.* at 15).

Conoco argues that this description of the insurance requirements is inaccurate and, as such, the justified expectations analysis was flawed. In support of its position, Conoco directs the Court to § 19.10 of the MSA:

> If the Texas Oilfield Anti-Indemnity Statute, [] and its amendments (the Statute), applies to the Work under a Call-Off Order, the mutual Indemnification contained in this Agreement will be supported by the liability insurance or qualified self-insurance which each Party, as Indemnitor, agrees has been obtained for the benefit of the Indemnitees. Contractor shall provide said liability insurance or qualified self-insurance coverage (under which the insurer has no right of subrogation against the Indemnitees) in the minimum amount of [$10,000,000] to support its Indemnity obligations under Article 18[.]

(Doc. No. 25-1 at 47). Conoco argues that this section does not require the Parties to only "broadly acquire insurance," but that it expressly includes the specific requirement for specific liability insurance to comply

with the Texas Oilfield Anti-Indemnity Statute. Then, relying on *Banta*, Conoco argues that this evidence clearly demonstrates that the Parties had the justified expectation to apply Texas law to the MSA. *See Banta*, 568 S.W.3d at 712 ("Not only was a Texas statute regulating indemnity specifically referred to in the MSA, but both parties agreed to comply with the Texas statute by purchasing an adequate amount of insurance."). Nevertheless, the Court recognizes that the statement that the MSA only requires that parties "broadly acquire insurance" is still not inconsistent with the holding in *Cannon Oil*.

First of all, § 19.10 of the MSA only applies *if* the Texas Oilfield Anti-Indemnity Statute applies. (Doc. No. 25-1 at 47). Thus, the Parties recognized at the time of contracting that there could be situations where the Texas Statute did not apply to the MSA. Second, in *Cannon Oil*, the Fifth Circuit pointed out that while the parties were required to acquire specific liability insurance to satisfy the indemnity provision (using language similar to the section quoted above), the "contract also include[d] an obligation to acquire liability insurance *notwithstanding* the insurance obligation in the indemnity provision." *Cannon Oil*, 20 F.4th at 192 (emphasis added). Such is the case here. While § 19.10 of the MSA requires that the Parties acquired insurance to meet the requirements of the Texas Oilfield Anti-Indemnity Statute (only *if* it applies), § 19.3 of the MSA also required Totem to broadly acquire primary insurance "available to any of the members of Company Group with regard to the risks, liabilities, *Indemnification obligations*, and warranty-related obligations assumed by Contractor under any Call-Off Order." (Doc. No. 25-1 at 45) (emphasis added). This is precisely the type of "Plan B" liability insurance contemplated by *Cannon Oil*, indicating that "the parties' expectations are not as one-sided as they appear on the surface" and that the Parties may have planned for a scenario in which the Texas Oilfield Anti-Indemnity Statute would not apply to the MSA. *Cannon Oil*, 20 F.4th at 192.[7]

---

[7] The Court notes that there are other indications that the Parties may not have expected Texas law to ultimately control the entire agreement. While not discussed in the previous order, the Court notes that the MSA considers scenarios in which the Texas Oilfield Anti-Indemnity Statute may not apply. For example,

While the Court did not previously discuss the fact that the Parties might be required to acquire specific insurance to comply with the Texas Oilfield Anti-Indemnity Statute, as one can see, this requirement is contingent and is only triggered if the Texas statute control. As such, this insurance obligation does not ultimately alter the analysis. The Court, therefore, follows the lead set out in *Cannon Oil* and declines the request to reverse its conclusion that New Mexico's interest in this litigation strongly outweighs the justified expectations of the Parties.

## C.  Policy Concerns in the Permian Basin

Lastly, Conoco requests this Court to consider the practical effects of invalidating this indemnification clause on the entire industry operating in the Permian Basin. Conoco contends that "[b]y applying New Mexico law to the subject MSA and invalidating Totem's bargained-for obligation to indemnify [Conoco], the Court effectively voids and/or re-writes hundreds to thousands of similar agreements that facilitate the development of oil and gas in the Permian Basin" and that the holding "would result in industry-standard indemnity and insurance provisions contained in contracts throughout

---

in addition to § 19.10's contingent requirement that "*[i]f* the Texas Oilfield Anti-Indemnity Statute . . . and its amendments . . . applies . . . ." (Doc. No. 45-1 at 47) (emphasis added), § 18.5.4 of Article 18 on Risk Structure states:

> If any provision contained in this Article 18 in favor of Company or any of the other members of Company Group is *determined by a court or other authority of competent jurisdiction to be void and unenforceable*, in whole or in part, or is adjusted in accordance with other provisions of this Agreement or by actions of a court or other authority of competent jurisdiction, the similar provision in favor of Contractor or any of the other members of Contractor Group is to be rendered void or unenforceable or to be adjusted to the same degree.

(*Id.* at 42). Thus, this section expressly considers the possibility that a court could render the indemnification clause as void and unenforceable. This Court finds this clause is an indication that the Parties planned for scenarios in which Texas law did not apply to the MSA, which demonstrates that the "justified expectations" of the Parties may not have been so lopsided in favor of Texas law. *See Cannon Oil*, 20 F.4th at 192 (discussing "clues" that "the parties' expectations are not as one-sided as they appear on the surface").

the industry being enforceable on one side of the Texas-New-Mexico state line and unenforceable on the other." (Doc. No. 33 at 8). While these considerations are generally contemplated by the choice-of-law principles, *see* (Doc. No. 28 at 13) (listing "certainty, predictability, and uniformity of result" as a factor under § 6 of the Restatement), the Fifth Circuit has advised that "those expectations can be overcome if they are 'substantially outweighed by the interests of the state with the invalidating rule.'" *Cannon Oil*, 20 F.4th at 193. As the Court described at length in its previous order, New Mexico has a materially greater interest in this litigation, and that interest substantially outweighs the justified expectations of the Parties and the general policy concerns raised by Conoco. (Doc. No. 28 at 16). After all, "[New Mexico] law [should] apply to this indemnity demand for a [New Mexico] lawsuit brought by a [New Mexico] resident performing work in the state for a [New Mexico] company." *Cannon Oil*, 20 F.4th at 193. Recognizing these facts and the fact that a large section of the Permian Basin is in New Mexico, the Court declines the request to reconsider based on these policy arguments.

The Parties may recognize a pattern here. While there are a few cases that apply the choice-of-law factors to oilfield indemnification clauses, such as *Chesapeake*, *Sonat*, *Banta*, and *Cannon Oil*, there is not an abundance of precedent on this issue. None of the facts in the preceding cases perfectly map onto the facts here. Each choice-of-law analysis is uniquely situated to contemplate the fact-intensive factors adopted in Texas. As the Court has recognized in its previous orders and in this discussion, some of the factors are undoubtedly a close call, and some of the cases reach different results on certain factors. Nevertheless, after carefully reviewing the applicable cases and the different facts and circumstances of each case, this Court continues to follow the analysis and holding in *Cannon Oil*. As noted above, this Court is compelled to follow Fifth Circuit precedent. Had this case arisen before the Fifth Circuit decided *Cannon Oil*, the result here might have been different. Nevertheless, until the Fifth Circuit changes its course or the Supreme Court of Texas makes a definitive decision, the Court declines to reverse its

conclusion that the choice-of-law principles adopted in Texas require this Court to find that New Mexico law controls this dispute.

## II.    The Duty to Defend

Having declined the request to reconsider the holding that New Mexico law controls this dispute, the Court turns next to whether New Mexico law bars Conoco's claim that Totem still has a duty to defend Conoco in the underlying personal injury lawsuit. After this Court held that the New Mexico Oilfield Anti-Indemnity Act "disallows Conoco's claim for indemnification," the Court stated that it was "unaware of any other issue that need to be resolved before it enters final judgment" and ordered the Parties to submit a joint letter to address whether any issues remain to be resolved. (Doc. No. 28 at 20). The Parties disagreed. While Totem argued that the order "dispose[d] of all claims and issues," Conoco argued that the Court only resolved the duty to indemnify and not the duty to defend, which are "separate and distinct under New Mexico law." (Doc. No. 29). The Court then ordered the Parties to provide supplemental briefing as to whether the New Mexico Oilfield Anti-Indemnity Act also "voids the Totem's defense obligation under the subject contract." (Doc. No. 30). Having carefully considered the supplemental briefing, (Doc. Nos. 32, 35, 36), and relevant legal standards, the Court finds that the New Mexico Oilfield Anti-Indemnity Act voids **both** the indemnification and defense obligations.

The Parties set out a variety of arguments in support of their respective positions, but the Court focuses on the arguments related to the scope of the New Mexico Oilfield Anti-Indemnity Act. Conoco argues that the New Mexico Oilfield Anti-Indemnity Act is only an "Anti-*Indemnity*" statute and does not expressly bar contractual defense obligations. (Doc. No. 32). Conoco argues that without the plain language that a defense obligation is void as a matter of public policy, the plain terms of the agreement must control this dispute and, accordingly, Totem has a duty to defend Conoco in the underlying personal injury dispute. (*Id.*). On the other hand, Totem argues that the New Mexico Oilfield Anti-Indemnity Act

13

voids not only the indemnification obligation but also the defense obligation as a matter of public policy, as the "duty to defend is concomitant with the duty to indemnify." (Doc. No. 35). Totem cites to New Mexico case law, *Piña v. Gruy Petroleum Mgmt. Co.*, to support the proposition that the New Mexico Oilfield Anti-Indemnity Act bars the duty to indemnify and the duty to defend a negligent indemnitee. 136 P.3d 1029 (N.M. Ct. App. 2006).

When applying New Mexico state law, this Court must closely adhere to the law established by the Supreme Court of New Mexico and the New Mexico Legislature. When the Supreme Court of New Mexico is silent on an issue, this Court is required to "make an *Erie* guess as to what" the Supreme Court of New Mexico would "most likely decide." *Herrmann Holdings Ltd. v. Lucent Tech. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) (quoting *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271 (5th Cir. 2000)). "Our task is to 'attempt to predict state law, not to create or modify it.'" *Id.* (quoting *United Parcel Serv., Inc. v. Weben Indus., Inc.*, 794 F.2d 1005, 1008 (5th Cir. 1986)). "In making an *Erie* guess, we defer to intermediate state appellate court decisions 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *First Nat'l Bank of Durant v. Trans Terra Corp.*, 142 F.3d 802, 809 (5th Cir. 1998)).

The Supreme Court of New Mexico has not addressed whether the New Mexico Oilfield Anti-Indemnity Act also bars defense obligations to allegedly negligent indemnitees. The Court therefore must defer to the relevant intermediate court decisions in order to make an *Erie* guess on this issue. In *Piña*, Gruy Petroleum Management Co. ("Gruy") (a Texas corporation) and Banta Oilfield Services, Inc. ("Banta") (a New Mexico corporation) entered into an agreement "under which Banta agreed to perform work at an oil well site operated by Gruy in Lea County, New Mexico." *Piña*, 126 P.3d at 1030. The agreement included an indemnification clause:

> [t]o the fullest extent permitted by law, [Banta] shall indemnify, defend and hold harmless [Gruy] . . . from and against all claims, damages, losses, liens, causes of action, suits,

14

judgments, fines and expenses, including, but not limited to reasonable attorneys' fees (collectively referred to and defined as "Liabilities"), of any person or entity arising out of, caused by or resulting directly or indirectly from the performance of the work under this Contract, . . . regardless of whether the Liabilities are caused in part by the negligence of any Indemnitee.

*Id.* at 1030-31. The agreement also stated that it "shall be construed and interpreted in accordance with the laws of the [S]tate of Texas." *Id.* at 1031.

After this agreement was executed, "Nora Piña filed a wrongful death action against Gruy, alleging that her husband, Daniel, suffered fatal burns in 2002 while employed by Banta at a well site located in Lea County, New Mexico." *Id.* "Piña alleged that her husband's injuries were caused by the wrongful conduct of Gruy's agents or employees." *Id.* Banta then intervened in the wrongful death action, alleging that Gruy had demanded that Banta defend and indemnify Gruy, and Banta sought "a declaratory judgment invalidating the indemnity provision as violative of the [New Mexico Oilfield Anti-Indemnity Act]." *Id.* More importantly for the question at hand, Banta's insurance carrier also intervened in the wrongful death action and "sought a declaratory judgment relieving it on grounds of public policy of any responsibility to ***defend*** or indemnify Gruy." *Id.* (emphasis added). The trial court found that the applicable provision was "against the public policy of New Mexico" and was "void and unenforceable." *Id.* Therefore, the court held, neither Banta nor its insurance carrier were required to defend or indemnify Gruy. *Id.* Gruy appealed, and the New Mexico intermediate court affirmed that result in *Piña.* *Id.*

The *Piña* court began its analysis with a discussion of the statutory history of the New Mexico Oilfield Anti-Indemnity Act, which states:

A. An agreement, covenant or promise, foreign or domestic, contained in, collateral to or affecting an agreement pertaining to a well for oil, gas or water, or mine for a mineral, within New Mexico, ***that purports to indemnify the indemnitee against loss or liability for damages*** arising from the circumstances specified in Paragraph (1), (2) or (3) of this subsection ***is against public policy and is void***:

(1) the sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee;

(2) the sole or concurrent negligence of an independent contractor who is directly responsible to the indemnitee; or

(3) an accident that occurs in operations carried on at the direction or under the supervision of the indemnitee, an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee.

N.M. Stat. Ann. § 56-7-2 (emphasis added).[8] The court provided an overview of the statutory history of the Act, including the amendments in 1999 and 2003, which added language that any such agreement "be void, is against public policy and void," as well as the addition that the Act applies to "foreign or domestic agreements." *See Piña*, 136 P.3d at 1033. These amendments, the court held, resulted in "an extraordinarily limited class of statutes whose very subject is the enforceability of contracts that contravene a specific public policy." *Id.* The court held that "[t]he Legislature expressly determined that in this particular context, freedom of contract was to be subordinated to the policies furthered by the Oilfield Anti-Indemnity Statute," focusing on the policy of "promoting safety at well sites." *Id.*

Relying on the stated policies furthered by the New Mexico Oilfield Anti-Indemnity Act, the appellate court in *Piña* held that "a choice-of-law provision contained in a contract . . . that purports to apply Texas' anti-indemnity statute to validate an otherwise prohibited indemnification agreement pertaining to work to be performed at a New Mexico oil well site is itself void as against public policy." *Id.* at 1034. The court further held that "indemnification agreements that undermine the indemnitee's incentive to promote safety at New Mexico well sites violate a fundamental public policy of New Mexico and are void and unenforceable; and further, agreements that purpose to escape the effect of the [Act] by invoking foreign law, likewise, are against public policy and are void and unenforceable in New Mexico courts." *Id.*

---

[8] The Act was last amended in 2003. *See* N.M. Stat. Ann. § 56-7-2. This is the same form considered by the *Piña* court and the same form of the Act that governs this case.

16

The *Piña* court was clear: the New Mexico Oilfield Anti-Indemnity Act voids any indemnification agreement that undermines the indemnitee's incentive to promote safety at New Mexico well sites. This Court relied on that holding in its previous order to support the holding that the Act is a fundamental policy in New Mexico. (Doc. No. 28 at 19). Conoco argues that *Piña* only applies to the duty to indemnify, while Totem argues that *Piña* voided the duty to defend, as well. While not explicitly discussed in *Piña*, Totem emphasizes that the court relied on the same reasoning that voided the indemnification provision to affirm the trial court's holding that neither Banta nor its insurance carrier had to duty to indemnify ***or defend*** Gruy. *See Piña*, 136 P.3d at 1031. Totem emphasizes that after the *Piña* lawsuit was filed, Banta and its insurance carrier intervened in the lawsuit and sought declaratory judgments. *Id.* Specifically, Banta's insurance carrier sought a declaratory judgment that it did not have the duty to indemnify ***or defend*** Gruy. *Id.* The trial court granted summary judgment for Banta and the insurance carrier and held that neither Banta nor the insurance carrier had the duty to indemnify or defend Gruy. *Id.* After finding that the indemnification provision was void as a matter of public policy, the appellate court in *Piña* affirmed the trial court on ***both*** issues. *Id.* Therefore, Totem argues, the holding implicitly held that voiding the entire indemnification clause (that included the duty to defend) barred the defense obligation. This Court agrees with that interpretation. By voiding the entire indemnification clause under the New Mexico Oilfield Anti-Indemnity Act, requiring that "[Banta] shall indemnify, defend and hold harmless [Gruy]," the *Piña* court held that Banta did not have the duty to indemnity nor the duty to defend Gruy. *Id.*

The same analysis applies here. The MSA in this case requires that Totem "shall Indemnify [Conoco] from and against any and all Claims arising out of or related in any way to Personal Injury . . . ." (Doc. No. 25-1 at 38). By the defined terms, the MSA states that "Indemnify" "means ***defend***, indemnify, release, and hold harmless." (*Id.* at 7). If the Court substitutes that contractual definition into the indemnification clause, then the provision reads that Totem "shall [defend, indemnify, release, and

hold harmless] from and against any and all Claims arising out of or related in any way to Personal Injury." (*Id.* at 7, 38). This language is nearly identical to the language in *Piña. See Piña*, 136 P.3d at 1031 ("[Banta] shall indemnify, defend and hold harmless [Gruy] . . . from and against all claims . . . arising out of, caused by or resulting directly or indirectly from the performance of the work under this Contract"). Given that the *Piña* court affirmed the lower court's holding that the provision (which included the duty to defend) was void as a matter of public policy, and accordingly, that Banta had neither the duty to indemnify nor the duty to defend Gruy, the Court defers to this New Mexico intermediate court and finds this that this is determinative of the same issue in this case. The Court holds as a matter of law that the New Mexico Oilfield Anti-Indemnity Act voids the defense obligation in the MSA.

The Court notes that Conoco makes additional statutory and contractual interpretation arguments to support its contention that this Court should not defer to the decision in *Piña*. Though the Court finds these arguments to be unavailing, the Court nevertheless briefly addresses these arguments for the record. First, Conoco also asks this Court to consider that a parallel statute, the New Mexico Construction Anti-Indemnity Act. *See* N.M. Stat. Ann. § 56-7-1. Conoco notes that this parallel statute expressly contemplates defense obligations. Therefore, according to Conoco, the absence of the mention of the defense obligation in the New Mexico Oilfield Anti-Indemnity Act should be dispositive. The Court finds, however, that this statutory interpretation argument, is unsupported by New Mexico state law.

Section 56-7-1 (the Construction Act) states that "[a] provision in a construction contract that requires one party to the contract to indemnify, hold harmless, insure or **defend** the other party to the contract . . . arising out of bodily injury to persons or damage to property . . . is void, unenforceable and against the public policy of the state." *Id.* (emphasis added). Section 56-7-2 (the Oilfield Act), however, only states that "[a]n agreement . . . that purports to **indemnify** the indemnitee against loss or liability arising from [the negligence of the indemnitee] . . . is against public policy and is void." N.M. Stat. Ann.

18

§ 56-7-2. While the inclusion of the defense obligation in one statute and the exclusion of the defense obligation in the neighboring statute may appear to be evidence that the exclusion was intentional, the Supreme Court of New Mexico has previously cast doubt on this argument.

In *United Rentals Northwest, Inc. v. Yearout Mechanical, Inc.*, the Supreme Court of New Mexico addressed the word-to-word comparison of § 56-7-1 and § 56-7-2. 237 P.3d 728, 735 (N.M. 2010) (comparing the construction and oilfield indemnity statutes). In *United Rentals*, one party argued that "because [§] 56-7-2, the statute addressing drilling and mining activities, contained express language referring to equipment rental agreements, the Legislature intended to exclude rental agreements from the scope of [§] 56-7-1, the statute addressing construction activities." *Id.* While the court noted that, in general, "if a statute on a particular subject omits a particular provision, inclusion of that provision in another related statute indicate[s] an intent [that] the provision is not applicable to the statute from which it was omitted," this rule of construction must be used with caution. *Id.* (quoting *Howard Jarvis Taxpayers Ass'n v. City of Salinas*, 98 Cal.App.4th 1351 (2002)). Specifically, the court noted that "[o]ther varying language used in the mining and construction anti-indemnification statutes *exemplifies the need for caution* in using simplistic and formulaic analyses of statutory wording." *Id.* (explaining that while § 56-7-2 bars indemnity agreements for "death or bodily injury to persons" and § 56-7-1 only states "bodily injury to persons," "[i]t would be unreasonable to assume" that § 56-7-1 did not apply to cases resulting in a death). The court then noted that "[New Mexico] precedents have repeatedly cautioned against using wording variations *in pari materia* statutes as a conclusive determinant of differing legislative intent." *Id.* (emphasis added).

This Court heeds that caution here. While § 56-7-1 includes the defense obligation and § 56-7-2 only mentions the indemnity obligation, the Supreme Court of New Mexico has held that this difference, among the several differences between these two statutes, is not dispositive evidence of legislative intent.

19

The two statutes, while furthering similar policy goals, are quite different and should not be subject to a word-to-word comparison.

To determine the meaning of the New Mexico Oilfield Anti-Indemnity Act, the Court is then left with the discussion in *Piña*, which maintains the fundamental policy of the Act is to promote safety at well sites over the freedom over contract. *Piña*, 136 P.3d at 1033. As the Supreme Court of New Mexico has recognized that "the Legislature has implicitly recognized what our courts have expressly articulated as the societal benefits that can be promoted by holding wrongdoers responsible for the harmful consequences of their own behavior" through "its anti-indemnification statutes," *United Rentals*, 237 P.3d at 734, the Court makes the *Erie* guess that the Supreme Court of New Mexico would interpret the New Mexico Oilfield Anti-Indemnity Act to void the correlative duty to defend as a matter of public policy.

Lastly, the Court addresses Conoco's contractual interpretation argument. Conoco contends that because the MSA includes a severability clause, the duty to defend should be upheld. The relevant provision states:

> It is intended that if any provision of this Agreement or a Call-Off Order is *determined to be unenforceable or void for any reason*, such provision is to be modified, if possible, in order *to achieve the intent of the Parties*, failing which *the unenforceable or void provision is to be deemed severed* from this Agreement or the Call-Off Order. In any event, all other provisions of this Agreement and the Call-Off Order are to be deemed valid binding, and enforceable.

(Doc. No. 28-1 at 11) (emphasis added). Conoco relies on this provision to argue that even if the indemnification provision is void (which this Court already ruled that it is), the defense provision should remain enforceable. That provision states:

> [Totem] *shall defend any litigation* or administrative or adversarial proceeding against any of the members of [Conoco] *related to any Claim from and against which [Totem] has agreed to Indemnify [Conoco]*.

(*Id.* at 42) (emphasis added). This contractual argument is likewise unavailing. As the Court has discussed at length, the Court finds that the New Mexico Oilfield Anti-Indemnity Act voids the defense obligation

20

as a matter of law. Even if defense obligation was severed from the voided indemnification provision (which, by contractual definition, includes the duty to defend), *see* (*id.* at 7), the remaining defense obligation in the above-quoted provision is still void as a matter of public policy.

The Court finds that existing New Mexico law voids the contractual duty to indemnify and duty to defend as a matter of public policy. The New Mexico state legislature has clearly articulated that "indemnification agreements that undermine the indemnitee's incentive to promote safety at New Mexico well sites violate a fundamental public policy of New Mexico and are void and unenforceable." *Piña*, 136 P.3d at 1034. Requiring Totem to defend the allegedly negligent Conoco in the underlying personal injury dispute would certainly undermine Conoco's incentive to promote safety at New Mexico well sites. The Court holds as a matter of law that the New Mexico Oilfield Anti-Indemnity Act disallows Conoco's claims for indemnification and defense.

### III.    Conclusion

For the foregoing reasons, Conoco's Motion for Reconsideration (Doc. No. 33) is denied. After reviewing the supplemental briefing submitted by the Parties, the Court revises its previous order (Doc. No. 28) the Totem's Motion for Summary Judgment (Doc. No. 26) on both the indemnification and defense obligations. A final judgment in accordance with Federal Rule of Civil Procedure 58 will follow this order.

It is so ordered.

Signed on this the ___10th___ day of June 2026.

Andrew S. Hanen.
United States District Judge